**Filed**
**File Date: 4/23/2019 1:23 PM**
**Strafford Superior Court**
**E-Filed Document**

STATE OF NEW HAMPSHIRE
STRAFFORD SUPERIOR COURT

Gail Hannigan

v.

The Monarch School of New England

219-2019-CV-00200
Case No. _____

## COMPLAINT
## JURY TRIAL DEMANDED

### Parties and Jurisdiction

1.      Plaintiff, Gail Hannigan, resides at 1 Smalls Way, York, Maine  03909.

2.      Defendant, The Monarch School of New England (hereinafter "MSNE"), is a

501(c)(3) New Hampshire non-profit corporation with an address of 61 Eastern Avenue, PO Box

1921, Rochester, NH  03866.

3.      Ms. Hannigan's claims arise under the Americans with Disabilities Act of 1990

("ADA"), Public Law No. 101-336, 42 U.S.C. §12101, *et seq*., the ADA Amendments Act of

2008  ("ADAAA"), Public Law No. 110-325, New Hampshire's Anti-Discrimination Law, N.H.

RSA 354-A, the Family and Medical Leave Act of 1993 ("FMLA"), 29 USC 2601 *et seq*, and

New Hampshire common law.

4.      On or about September 20, 2018, Ms. Hannigan filed a Charge of Discrimination

(hereinafter "Charge") with the New Hampshire Commission for Human Rights, in accordance

with the requirements of RSA 354-A and the Equal Employment Opportunity Commission, in

accordance with the requirements of 42 U.S.C. §12101 *et seq*. and RSA 354-A.

5.      Ms. Hannigan's Charge was filed with the New Hampshire Commission for Human Rights within 180 days after the unlawful employment acts, and with the Equal Employment Opportunity Commission within 300 days after the unlawful employment acts were committed.

6.      On or about April 4, 2019, more than 180 days having elapsed since the filing of the Charge, the Equal Employment Opportunity Commission issued Ms. Hannigan a Notice of Right to Sue with respect to her Charge, thus satisfying the procedural prerequisites established by 42 U.S.C. §12101, *et seq*. (*See* Exhibit A, Notice of Right to Sue, attached hereto and incorporated herein by reference).

7.      This Complaint is filed less than 90 days after receipt of the Notice of Right to Sue, dated April 4, 2019 (as attached).

8.      The Court has jurisdiction over this case because Ms. Hannigan performed work for MSNE in Rochester, Strafford County, New Hampshire.

### Facts

9.      Ms. Hannigan worked for MSNE for nearly 14 years, until her unlawful termination on June 26, 2018.

10.     Ms. Hannigan's employment began at the start of the school year in 2004.

11.     Throughout her employment with MSNE, Ms. Hannigan held the position of Director of Finance.

12.     Ms. Hannigan had good work performance throughout her employment with MSNE.  In her years at MSNE, Ms. Hannigan had 14 perfect audits.

13.     In or about April 2018, Ms. Hannigan had to miss work as a result of her disability; anxiety and depression.

14.    Ms. Hannigan was out of work from April 17, 2018 to May 1, 2018.[1]

15.    Ms. Hannigan's doctor, Mark P. Cartier, MD, provided a note accounting for her absence from work due to her disability.  The note stated "no work 4/17/18 – 4/30/18."

16.    In addition, Ms. Hannigan kept her immediate supervisor, Diane Bessey, the Executive Director of MSNE, regularly informed (daily or almost daily) through text messages.

17.    Ms. Bessey was aware of Ms. Hannigan's disability because Ms. Hannigan had previously been out of work during the year 2016 for the same reason.

18.    Ms. Hannigan was out of work April 17, 19, 20, 23, 24, 25, 26, 27, and 30.  Those days were days off that should have been covered by the FMLA.  Since Ms. Hannigan's supervisor, Ms. Bessey, knew the reason that Ms. Hannigan was out of work for those days, she should have counted them as FMLA days.

19.    Ms. Hannigan returned to work on May 1, 2018.

20.    Following her return to work, Ms. Hannigan received a negative performance evaluation, on or about May 31, 2018.

21.    That performance evaluation made repeated reference to Ms. Hannigan's disability, including, but not limited to, the following statements:  Future Goals/Professional Development:  "Become healthier so it won't affect her work;" "Gail's attendance is of highest concern:  she has been absent 20 days, many of which are Mondays, late due to sickness once, left early sick 5 times, late for personal reasons 5 times, left early for personal reasons 9 times, and taken 12 vacation days;" "Gail's attitude towards and commitment to her work appear to have dramatically decreased this year."  In fact, as paid benefits at MSNE, Ms. Hannigan was entitled to 3 personal days, 10 sick days, and she accrued 5 weeks of vacation per year.  Ms.

---

[1] On April 18th, although Ms. Hannigan was out of work, she drove to meet Ken Plourde to get all the information needed to process payroll from home because she was the only person at the school who knew how to process payroll.

Hannigan had not exceeded her paid benefit time from MSNE as of May 31, 2018, when she received the evaluation.

22.     On June 26, 2018, Ms. Hannigan was presented with a letter terminating her employment and offering her severance in return for execution of a general release (which Ms. Hannigan declined to accept).

23.     The letter stated that Ms. Hannigan was being terminated due to "unsatisfactory job performance as indicated in your most recent performance review."

24.     The letter also stated that Ms. Hannigan would "be considered an 'at will' hourly employee at [her] current rate for the period of July 1, 2018 through August 16, 2018."

25.     MSNE's stated reason for Ms. Hannigan's termination was not the real reason for the termination of her employment.  The real reason that MSNE terminated Ms. Hannigan's employment was disability discrimination and retaliation against her for taking an FMLA protected leave.

26.     Upon information and belief, MSNE has hired a non-disabled employee to perform the work previously performed by Ms. Hannigan.  Ms. Hannigan was replaced by Anthony Demers.[2]  Mr. Demers is less qualified for the position than Ms. Hannigan.  His position prior to taking over Ms. Hannigan's position was as a commercial loan officer and he told Ms. Hannigan he had little bookkeeping skills.  It took Ms. Hannigan six weeks to try to train him to take over her job after she was notified that her employment was being terminated by MSNE.[3]

---

[2] At that time, Mr. Demers was the Treasurer of the Board of Directors for MSNE.
[3] Upon information and belief, Mr. Demers' employment with MSNE has recently ended.

27.     MSNE did not have any performance-based reason to terminate Ms. Hannigan's employment with MSNE because she had good performance throughout her many years of employment with MSNE.

28.     Since Ms. Hannigan's termination from MSNE, she has been unable to secure alternative comparable employment and, therefore, she has suffered, and continues to suffer, significant lost wages.

29.     Ms. Hannigan was last paid a salary of $80,726.31.  (MSNE converted Ms. Hannigan to an at-will, hourly employee earning $38.81 per hour, plus benefits, as of June 26, 2018, when she received the letter terminating her employment, effective August 16, 2018.)

30.     The discriminatory termination of Ms. Hannigan's employment by MSNE has caused, and continues to cause, her emotional harm.

31.     On February 26, 2019, eight months after the end of Ms. Hannigan's employment, MSNE sent Ms. Hannigan's counsel a letter.  The letter is attached as Exhibit B and incorporated herein.

32.     Ms. Hannigan's counsel forwarded the letter to Ms. Hannigan.

33.     On February 28, 2019, Ms. Hannigan's counsel responded to the letter.  Ms. Hannigan's counsel's response is attached as Exhibit C and her statements are incorporated herein.

34.     MSNE did not respond to the February 28, 2019, letter.

35.     As a result of MSNE's February 26, 2019, letter, Ms. Hannigan experienced significant emotional distress.

36.     On March 4, 2019, Ms. Hannigan had a severe panic attack because of the February 26, 2019, letter from MSNE.  Ms. Hannigan experienced physical manifestations of

5

emotional distress including atrial fibrillation for which she has been referred to the care of a cardiologist.

37.     In addition, Ms. Hannigan has incurred, and will incur, attorneys' fees and costs.

38.     Ms. Hannigan seeks all recoverable damages available pursuant to the ADA, the ADAAA, N.H. RSA 354-A, the FMLA, and New Hampshire common law.

39.     Ms. Hannigan has suffered, and will continue to suffer, lost wages and benefits, and emotional distress. She is seeking recovery of lost wages and benefits, future lost wages and benefits, compensatory damages, enhanced compensatory damages, liquidated damages, punitive damages, and attorneys' fees and costs.

## COUNT I
### Violation of ADA and ADAAA Discrimination

40.     The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

41.     The Defendant discriminated against and terminated Ms. Hannigan's employment because of her disability (actual, record of, and/or regarded as).

42.     In terminating Ms. Hannigan and in otherwise violating the ADA and ADAAA, the Defendant acted with malice and/or with reckless indifference to Ms. Hannigan's federally-protected rights.

43.     As a direct and proximate result of the Defendant's unlawful and discriminatory actions, Ms. Hannigan has suffered damages, including lost back pay and benefits, front pay and future lost benefits, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, punitive damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

## COUNT II
### ADA and ADAA Retaliation

44.　　The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

45.　　The Defendant retaliated against Ms. Hannigan, including, but not limited to, taking away her status as a salaried status, and terminating her employment for asserting her legal right to be free from discrimination and/or for requesting reasonable accommodations.

46.　　In retaliating against Ms. Hannigan, the Defendant acted with malice and/or with reckless indifference to Ms. Hannigan's federally-protected rights.

47.　　As a direct and proximate result of the Defendant's unlawful and retaliatory actions, Ms. Hannigan has suffered damages, including lost back pay and benefits, front pay and future lost benefits, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary losses, punitive damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

## COUNT III
### RSA 354-A Discrimination

48.　　The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

49.　　As further detailed in Count I, the Defendant discriminated against Ms. Hannigan in violation of N.H. RSA 354-A:7, culminating in the termination of her employment.

50.　　Ms. Hannigan brings this action pursuant to N.H. RSA 354-A:21-a.

51.　　In terminating Ms. Hannigan and in otherwise violating RSA 354-A, the Defendant acted with willful and/or with reckless disregard of Ms. Hannigan's legally-protected rights.

7

52.     Ms. Hannigan has suffered damages, including, but not limited to, lost wages and benefits, future lost wages and benefits, pre-judgment and post-judgment interest, attorneys' fees and costs, and emotional distress.

53.     Ms. Hannigan seeks to recover her lost wages and benefits, future lost wages and benefits, compensatory damages, enhanced compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to RSA 354-A:21, II (d).

**COUNT IV**
**Violation of N.H. RSA 354-A (Retaliation)**

54.     The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

55.     As further detailed in Count II, the Defendant retaliated against Ms. Hannigan, including, but not limited to, taking away her status as a salaried status, and terminating her employment, in violation of N.H. RSA 354-A:19, for asserting her legal right to be free from discrimination and for requesting reasonable accommodations.

56.     Ms. Hannigan brings this action pursuant to N.H. RSA 354-A:21-a.

57.     In retaliating against Ms. Hannigan, the Defendant acted with willful and/or reckless disregard of Ms. Hannigan's legally-protected rights.

58.     Ms. Hannigan has suffered damages, including, but not limited to, lost wages and benefits, future lost wages and benefits, attorneys' fees and costs, pre-judgment and post-judgment interest, and emotional distress.

59.     Ms. Hannigan seeks to recover her lost wages and benefits, future lost wages and benefits, compensatory damages, enhanced compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to RSA 354-A:21, II (d).

## COUNT V
### Violation of N.H. RSA 354-A (Interference, Coercion, Intimidation)

60.     The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

61.     The Defendant violated RSA 354-A:11 by coercing, intimidating, threatening, and interfering with Ms. Hannigan's exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of rights granted by RSA 354-A.

62.     Plaintiff filed a Charge of Discrimination with the New Hampshire Commission for Human Rights.

63.     The Plaintiff's Charge of Discrimination alleged, among other things, that the Defendant violated RSA 354-A.

64.     The Defendant acted to coerce, intimidate, threaten, and interfere with Ms. Hannigan's exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of rights granted by RSA 354-A, by sending the February 26, 2019 letter, by instructing Ms. Hannigan not to communicate with current employees of the Defendant and, on information and belief, by instructing others not to communicate with Ms. Hannigan.

## COUNT VI
### Violation of the FMLA (Retaliation)

65.     The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

9

66.     Plaintiff was employed by the Defendant for more than 12 months prior to the time that she requested time off for her own serious health condition.  29 C.F.R. §825.110; 29 U.S.C. §2612(a).

67.     Plaintiff had been employed by the Defendant for at least 1,250 hours of service during the 12-month period immediately preceding the time that she requested time off that was protected by the FMLA.  29 C.F.R. §825.110.

68.     Plaintiff was employed by the Defendant at a worksite where 50 or more employees were employed within 75 miles of that worksite.  *Id.*

69.     Plaintiff's medical leave was for her own serious health condition that made her unable to perform the functions of her job.  29 U.S.C. §2612(a).

70.     Plaintiff's serious health condition required continuing treatment by a health care provider.  29 U.S.C. §2611(11); 29 C.F.R. §825.115.

71.     Plaintiff's use of protected FMLA leave and/or disclosure of the need for more FMLA protected leave were motivating factors in the decision to terminate Plaintiff's employment.

72.     It was unlawful for the Defendant to discharge or in any other manner discriminate against Plaintiff as a result of her taking FMLA and/or disclosing her need for additional leave which was protected FMLA leave.  29 C.F.R. §825.220(c).

73.     Defendant knowingly violated the FMLA and, therefore, liquidated damages are appropriate.

74.     As a result of the Defendant's violation of the FMLA, Plaintiff is entitled to relief, including, but not limited to, back pay, front pay, interest on back and front pay, reinstatement, liquidated damages in an amount equal to the sum of back and front pay, plus interest on both

back and front pay for the Defendant's bad faith violation of the FMLA, attorneys' fees, expert witness fees, and costs of the action.

## COUNT VII
### Wrongful Termination

75.     The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

76.     Ms. Hannigan was wrongfully terminated from her employment in violation of public policy for taking actions that public policy would encourage, namely, for taking a medical leave to which she was entitled. *Cloutier v. Great Atlantic & Pac. Tea Co., Inc.,* 121 N.H. 915 (1981).

77.     MSNE's wrongful termination of Ms. Hannigan's employment was motivated by bad faith, retaliation, and malice. *Wenners v. Great State Beverages*, 140 N.H. 100, 103 (1995), *cert. denied*, 516 U.S. 1119 (1996).

78.     As a result of the wrongful termination of her employment, Ms. Hannigan has suffered, and continues to suffer, substantial injury and damage, including, but not limited to, lost wages and benefits, future lost wages and benefits, physical pain and suffering, emotional distress, and enhanced compensatory damages for the wanton, oppressive, and malicious actions of the MSNE, all within the jurisdictional limits of this Court.

## COUNT VIII
### Negligent Infliction of Emotional Distress

79.     The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

80.     Eight months following the end of Ms. Hannigan's employment with the Defendant, the Defendant negligently sent Ms. Hannigan the February 26, 2019 letter, failed to

respond to Ms. Hannigan's February 28, 2019 letter and/or to retract the contents of the February 26th letter, instructed Ms. Hannigan not to communicate with current employees of MSNE, upon information and belief, instructed others not to communicate with Ms. Hannigan, and threatened legal action against her.

81.     It was foreseeable that the letter would cause Ms. Hannigan serious mental and emotional harm, particularly because the Defendant was aware from Ms. Hannigan's disability that she was susceptible to emotional distress.

82.     The Defendant's negligent conduct caused Ms. Hannigan serious mental and emotional harm accompanied by objective physical symptoms.

83.     As a result of the Defendant's conduct, Plaintiff is entitled to relief, including, but not limited to, damages, attorneys' fees, expert witness fees, and costs of the action.

**COUNT IX**
**Intentional Infliction of Emotional Distress**

84.     The Plaintiff hereby incorporates by reference the preceding paragraphs and makes them a part of this Count as though fully set forth herein.

85.     The February 26, 2019 letter, Defendant's failure to respond to Ms. Hannigan's February 28, 2019 letter and/or its failure to retract the contents of the February 26th letter, and/or the Defendant's instructions to Ms. Hannigan not to communicate with current employees of MSNE, and/or, upon information and belief, Defendant's giving instructions to others not to communicate with Ms. Hannigan, and threatening legal action against her, was extreme and outrageous conduct, particularly because MSNE was aware from Ms. Hannigan's disability that she was susceptible to emotional distress, and her actions were activity clearly protected by RSA 354-A.

86.     By its conduct, the Defendant intentionally caused Ms. Hannigan severe emotional distress.

87.     Ms. Hannigan's emotional distress caused her physical symptoms and bodily harm.

88.     As a result of the Defendant's conduct, Plaintiff is entitled to relief, including, but not limited to, damages, attorneys' fees, expert witness fees, and costs of the action.

Respectfully submitted,

Gail Hannigan, Plaintiff

By Her Attorneys
UPTON & HATFIELD, LLP

Date:   April 23, 2019                       By: /x/ Heather M. Burns
                                             Heather M. Burns (NHBA #8799)
                                             Lauren S. Irwin (NHBA #10544)
                                             Brooke Lovett Shilo (NHBA #20794)
                                             10 Centre Street, PO Box 1090
                                             Concord, NH 03302-1090
                                             (603) 224-7791
                                             hburns@uptonhatfield.com
                                             lirwin@uptonhatfield.com
                                             bshilo@uptonhatfield.com

# EXHIBIT A

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Gail Hannigan**<br>**1 Smalls Way**<br>**York, ME 03909** | From:  **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**Government Ctr, Room 475**<br>**Boston, MA 02203** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| **16D-2018-00377** | **Amon L. Kinsey, Jr.,**<br>**Supervisory Investigator** | | **(617) 565-3189** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X]  Other *(briefly state)*          **Charging Party pursuing claim in another forum.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

| | | |
|---|---|---|
| Enclosures(s) | | |
| | **Feng K. An,**<br>**Area Office Director** | *(Date Mailed)* |
| cc: | | |

**THE MONARCH SCHOOL OF NEW ENGLAND**
**61 Eastern Avenue  Po Box 1921**
**Rochester, NH 03866**

# EXHIBIT B

BRIANA M. COAKLEY, ESQ.
LICENSED NH & MA
BCOAKLEY@COAKLEYHYDE.COM



STEVEN F. HYDE, ESQ.
LICENSED NH, ME & MA
SHYDE@COAKLEYHYDE.COM

Tuesday, February 26, 2019

Upton & Hatfield, LLP
Heather M. Burns, Esq.
10 Centre Street
PO Box 1090
Concord, NH 03302-1090

FEB 2 7 2019

**Re: Hannigan v. Monarch School of New England**

Dear Heather:

I am writing to advise you of a serious matter brought to my attention about Gail Hannigan by my client, Monarch School of New England, through Diane Bessey, Executive Director, and Kenneth Plourde, Director of Human Resource. I am advised that a report was made by a current Monarch School employee that Ms. Hannigan has been making unwanted contact with the employee as recently as last Thursday, February 21, 2019. The employee is seeking help to prevent Ms. Hannigan from further contacting her.

The current employee reported to Ms. Bessey that Ms. Hannigan implied during the conversation that in March things were going to happen and Diane Bessey would no longer be employed by the school. I am advised that this is not the first contact that Ms. Hannigan has had with the employee. I am instructing my client to document all reported witnesses and discussions had by Ms. Hannigan with current employees. If Ms. Hannigan's claim before the New Hampshire Commission for Human Rights moves beyond the investigation stage, I will be prepared to present any and all known witnesses and information that is gathered as a result of your clients unwanted contact with Monarch School employees. I am also advised that Ms. Hannigan has admitted during her conversation with the employee that she is encouraging another past employee to "hire a lawyer". Should Ms. Hannigan encourage others to bring unwarranted legal claims against my client and her admission proves to be true and damages result, I will certainly instruct my client to pursue any necessary claims against Ms. Hannigan as a result of her actions.

Please immediately advise your client to refrain from contacting current Monarch employees.

Very truly yours,

Briana M. Coakley, Esq.

Cc: Client

# EXHIBIT C

Russell F. Hilliard
James F. Raymond
Barton L. Mayer
Heather M. Burns
Lauren Simon Irwin
Justin C. Richardson
Michael S. McGrath*
Jeanne S. Saffan**
Peter W. Leberman
Sabrina C. Beavens***
Susan Aileen Lowry
Nathan C. Midolo****
Michael P. Courtney*
Brooke Lovett Shilo



Upton
& Hatfield LLP
*ATTORNEYS AT LAW*

Serving New Hampshire since 1908

*Of Counsel*
Douglas S. Hatfield
Gary B. Richardson
John F. Teague
Charles W. Grau
Thomas W. Morse
Norman H. Makechnie
Jeffrey R. Crocker

\* Also admitted in MA
\*\* Also admitted in MA & NY
\*\*\* Also admitted in FL
\*\*\*\* Also admitted in MN

February 28, 2019

## VIA EMAIL AND FIRST CLASS MAIL

Brianna M. Coakley, Esq.
Coakley & Hyde, PLLC
154 Maplewood Avenue
PO Box 6590
Portsmouth, NH  03802

   Re: Hannigan v. Monarch School of New England

Dear Attorney Coakley:

  I am writing in response to your letter of February 26, 2019.

  Ms. Hannigan was friendly with many school employees during her employment and remained friendly with many of them after her employment ended. Ms. Hannigan does not believe she has discussed her Charge with them but certainly would be permitted to do so.

  She recalls one employee telling her that she was not comfortable speaking with Ms. Hannigan because the school had sent out an email telling employees not to discuss the school with anyone. Ms. Hannigan did not contact that employee again after she said she was uncomfortable with contact.

  Ms. Hannigan has been friendly with Wendy Fontaine for a long time and has remained friendly with her. Ms. Hannigan prepares Ms. Fontaine's son's taxes and they have spoken on the telephone on several occasions. They were talking about going to dinner together when they spoke last week. Ms. Fontaine never suggested that she no longer wished to be friends or to have contact with Ms. Hannigan. Based upon your letter, Ms. Hannigan will not contact Ms. Fontaine again.

  However, we are concerned that Ms. Fontaine and others may have been intimidated by the school and think that communicating with Ms. Hannigan (or participating in the HRC investigation) will put their jobs in jeopardy. We would caution the school that such intimidation would constitute interference in violation of RSA 354-A:11.

Case 1:19-cv-00565-LM   Document 1-1   Filed 05/28/19   Page 20 of 20


February 28, 2019
Page 2

     Finally, Ms. Hannigan may have mentioned to Ms. Fontaine that she had spoken with a former employee named Sherry Fogerty after Ms. Fogerty's employment ended because Ms. Fontaine and Ms. Fogerty are friends. Ms. Hannigan did suggest that Ms. Fogerty consider getting legal advice because Ms. Hannigan believes that Ms. Fogerty may have been unlawfully terminated due to her medical condition. This was completely appropriate for Ms. Hannigan to do and your client's efforts to intimidate Ms. Hannigan on this issue are improper and could be viewed as unlawful interference and/or retaliation.

     Please call me if you wish to discuss.

Very truly yours,

Heather M. Burns, Esq.
hburns@uptonhatfield.com
(603) 224-7791

cc:    Gail Hannigan